IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAW FILMS, LTD.                :      CIVIL ACTION
                               :
            v.                 :
                               :
JOHN DOES 1-15                 :      NO. 11-7248


MEMORANDUM

McLaughlin, J.                                      March 23, 2012

        The plaintiff filed this suit on November 21, 2011, alleging that each of fifteen Doe defendants infringed the copyright in its motion picture by reproducing and distributing it over the Internet using a peer-to-peer file-sharing protocol called BitTorrent.  The Doe defendants are identified solely by internet protocol ("IP") addresses corresponding to the Internet connections alleged to have been used to infringe the plaintiff's copyright.  The Court granted an earlier motion by the plaintiff for leave to file subpoenas on the Internet Service Providers ("ISP") servicing the IP addresses identified in the complaint to help determine the identity of the Doe defendants.  No Doe defendant to date has been identified by the plaintiff or served with the complaint.  Two of the Doe defendants, made aware of the subpoenas by their ISPs, have moved to quash those subpoenas and sever the case as to all other Doe defendants.  Because the joinder of the fifteen Doe defendants is proper and quashing the subpoenas issued would be inappropriate at this stage of the litigation, the Court will deny the defendants' motions.

I.   <u>Complaint</u>

The plaintiff claims that the Doe defendants, each
identified only by an IP address, willfully copied, reproduced,
redistributed, performed, and displayed its motion picture,
"Bareback Street Gang" (the "Work") by means of the file-sharing
protocol known as BitTorrent, in violation of federal copyright
law, 17 U.S.C. § 106(1) <u>et seq</u>.  Compl. ¶¶ 44-49.

A.   <u>BitTorrent</u>

According to the plaintiff, the BitTorrent protocol
facilitates file-sharing by permitting multiple users to download
and upload the same file simultaneously.  An initial "seeder"
begins the process by using a BitTorrent client program to break
the file intended for sharing ("original file") into identically
sized "pieces," each of which has a unique alphanumeric hash
code, and creating a "torrent," which records those hash codes
and permits other client programs to identify, download, and
reassemble the pieces into the original file.  <u>Id.</u> ¶¶ 13-21.

When other users, known as "peers," download the
torrent file, the BitTorrent protocol signals that those peers
are seeking to download the original file, and the seeder begins
to distribute pieces to those users.  Once a peer has downloaded
a piece, it serves as a source of that piece to other peers
possessing the torrent and seeking to download the original file.
When a peer has downloaded all of the pieces, the client program

-2-

continues to distribute the file like the initial seeder.  In
this way, the initial seeder and peers serve to share and
distribute the original file in an activity known as a "swarm."
Id. ¶¶ 28-31.

      B.   Activity of Does 1-15

        Each of the Doe defendants is alleged to have
participated in the same "swarm" sharing and distributing the
plaintiff's Work.  Id. ¶ 32.  The plaintiff used forensic
software to track and identify BitTorrent activity involving a
specific copy of the Work that was identified by its own "Unique
Hash Number."  The investigation identified fifteen IP addresses,
corresponding to the Doe defendants here, that participated in
the same swarm by transmitting a piece of this version of the
Work using the BitTorrent protocol.  Each IP address connected to
a server established by the plaintiff's investigator and
transmitted a piece of the same copy of a file constituting the
plaintiff's Work between July and October 2011.  Id. ¶¶ 35-40,
Ex. A.

        By participating in the same swarm, the defendants are
each alleged to have directly infringed the plaintiff's copyright
in the Work and to have "induced, caused[,] or materially
contributed to the infringing conduct" of the other defendants.
Id. ¶¶ 48, 54.

II.  Procedural History

        After the plaintiff filed suit but before identifying
any Doe defendants, it moved for leave to serve subpoenas on
Cavalier Telephone, Comcast Cable, and Verizon Internet Services,
the ISPs that service the fifteen IP addresses the plaintiff
alleges were used to infringe its copyright.  The subpoenas
commanded each ISP served to provide the plaintiff with the "true
name, address, telephone number, e-mail address and Media Access
Control address of the Defendant to whom the ISP assigned an IP
address" identified in Exhibit A to the motion (and the
complaint).  The Court granted that motion in part but denied the
plaintiff's request to rule in advance on objections to those
subpoenas.[1] (ECF No. 4).

        On February 10, 2012, a Motion to Quash or Modify the
Subpoena was filed by one Doe defendant (identifying him or
herself by the e-mail address johndoe07248@yahoo.com), requesting
that the Court sever the remaining defendants from the case under
Federal Rule of Civil Procedure 21.  (ECF No. 5).  The plaintiff
opposed that motion on February 24, 2012, arguing that the
requirements for permissive joinder had been met and that
severance would impair its ability to enforce its rights.

---

        [1] The subpoena authorized by the Court directs ISPs that are
"cable operators" as defined by federal statute to notify its
subscribers of the subpoena.  Pl.'s Proposed Order ¶ 4 (ECF No.
3) (citing 47 U.S.C. § 551(c)(2)(B)).

On February 28, 2012, another Doe defendant (identified by the email address johndoeedpa1234@yahoo.com), apparently using an IP address serviced by Verizon Internet Services, filed a motion with the Court. (ECF No. 7).  That motion seeks severance of the remaining Doe defendants, the quashing of the subpoena served on his ISP, and/or the issuance of a protective order staying all discovery in the case until his or her interests can be heard.  The plaintiff opposed that motion on March 13, 2012.

III. <u>Discussion</u>

The Court finds that the allegations of the complaint make joinder appropriate at this early stage of litigation because the plaintiff asserts a right to relief against all Doe defendants that appears, given the technology involved, to arise out of the same series of transactions or occurrences and because common questions of law or fact seem to be raised with respect to all Doe defendants by virtue of the use of BitTorrent to transmit the same copy of the plaintiff's Work.  Further, the Court finds that (a) the information sought in the subpoenas is relevant to the plaintiff's claims; and (b) under the circumstances, the plaintiff's right to pursue its claims of infringement by means of discovering subscriber information outweighs the moving defendant's asserted rights to remain anonymous in connection with the alleged infringing activity.  As a result, the Court will deny the moving defendants' motions to quash or modify the

subpoenas.

    A.   <u>Joinder</u>

       "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  Where misjoinder occurs, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.

       Although the United States Court of Appeals for the Third Circuit has not directly interpreted Rule 20(a), it has held that events comprising the same transaction or occurrence bear a "logical relationship to one another" and feature "the same factual issues [or] the same factual and legal issues."  <u>Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.</u>, 292 F.3d 384, 390 (3d Cir. 2002) (interpreting the relationship of compulsory counterclaims under Rule 13, which <u>must</u> arise out of the same transaction or occurrence).

       The general policy of the rules regarding joinder is "toward entertaining the broadest possible scope of action consistent with fairness to the parties," and joinder "is

-6-

strongly encouraged." United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966); see also Hagan v. Rogers, 570 F.3d 146, 152 (3d Cir. 2009) (quoting Gibbs). The purpose of Rule 20(a) is "to promote trial convenience" and prevent a multiplicity of lawsuits. However, severance of parties where joinder is not required is committed to the court's discretion if it finds that the objectives of the rule are not fostered, or that joinder could "result in prejudice, expense or delay." 7 Charles Alan Wright, et al., Federal Practice & Procedure § 1652 (3d ed. 2001).

Here, the plaintiff argues that joinder of the Doe defendants in a single action is appropriate because "the claims against all defendants are logically related and Plaintiff is seeking joint and several liability," and that the defendants, as members of the same BitTorrent swarm, participated in the same series of transactions or occurrences. No defendant has appeared in this matter, as no defendant has been served with the complaint. However, based on the plaintiff's characterizations of the nature of the BitTorrent technology and the allegations against each Doe defendant, the Court cannot accept the moving Does' arguments that a finding of misjoinder is appropriate at this stage. As a result, the Court will not sever the proceedings as to each defendant at this stage. The Court may review the propriety of joinder later in the proceedings, once

-7-

the defendants are served and appear.  By that time, a variety of defenses or other arguments as to why joinder is inappropriate, may be raised by the defendants.

The plaintiff alleges that it retained a forensic investigator, who determined that each of the fifteen Doe defendants copied a piece of the same copy of the Work as identified by a particular cryptographic hash value, and that each of the defendants' computers connected to the investigator's server and transmitted at least a piece of the Work.  Compl. ¶¶ 35, 37-39.  By using BitTorrent to upload or download the same file, the Doe defendants are part of the same "swarm."  This is so even though each defendant's activity occurred during different times over a seventy-four day period.  Three pairs of Doe defendants are alleged to have participated in the swarm on the same day, although no act of transmittal is alleged to have occurred within fourteen hours of another.  Compl. Ex. A.

Based on the plaintiff's allegations regarding the nature of BitTorrent, the pieces of the Work copied by each defendant may have been transmitted by or subsequently sent to other defendants, albeit indirectly, because "recipient peers . . . automatically begin delivering the piece they just received to other peers in the same swarm."  Id. ¶ 33.  Even if no Doe defendant directly transmitted a piece of the Work to another Doe defendant, the Court is satisfied that at this stage

-8-

of the litigation the claims against each Doe defendant appear to arise out of the same series of transactions or occurrences, namely, the transmission of pieces of the same copy of the Work to the same investigative server.

The claims against each defendant are logically related because they will feature largely duplicative proof regarding the nature of BitTorrent, the plaintiff's ownership interest in the copyright for the Work, and the forensic investigation conducted by the plaintiff.  These common questions of fact are likely to arise along with the legal standards for direct and contributory copyright infringement liability.  The joining of the fifteen defendants that have these elements in common will, at this point, prevent a multiplicity of lawsuits.  Thus, the requirements of Rule 20(a)(2) are met, and its purposes furthered.

Additionally, at this stage of litigation, joinder will not result in prejudice to any defendant or result in needless delay.  Indeed, severance of the action as requested by the two moving Doe defendants would require the filing of separate actions and the issuance of new subpoenas on the internet service providers serving the IP addresses in this case in order to identify each defendant.  Neither of these steps would "secure the just, speedy, and inexpensive determination" of the action. Fed. R. Civ. P. 1.  No defendant will be prejudiced by joinder at

this stage, as none has been served in the matter or required to respond to the complaint.  Instead, the defendants may benefit from joinder by permitting them to obtain the same discovery from the plaintiff or allowing them to see any defenses raised by other Doe defendants.  See Call of the Wild Movie, LLC v. Does 1-1062, 770 F. Supp. 2d 332, 344 (D.D.C. 2011) (citing London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 161 (D. Mass. 2008)).  The defendants may challenge the appropriateness of joinder later in the proceedings.

Courts faced with allegations of copyright infringement brought against multiple unnamed defendants based on the use of BitTorrent have split on whether joinder is appropriate.  Compare Hard Drive Prods., Inc. v. Does 1-55, No. 11-2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (joinder appropriate); Donkeyball Movie, LLC v. Does 1-171, 810 F. Supp. 2d 20, 27-28 (D.D.C. 2011) (same) with Hard Drive Prods. Inc. v. Does 1-30, No. 11-345, 2011 WL 4915551, at *4 (E.D. Va. Oct. 17, 2011) (joinder inappropriate); Hard Drive Prods., Inc. v. Does 1-188, 809 F. Supp. 2d 1150, 1156-64 (N.D. Cal. 2011) (same).

Courts that have permitted joinder appear to have taken the same approach as this Court by finding it appropriate as an initial matter and permitting any defendant, once named and served, to challenge the appropriateness of joinder later in the case.  See, e.g., K-Beech Inc. v. Does 1-57, No. 11-358, 2011 WL

5597303 (M.D. Fla. Nov. 1, 2011); <u>Call of the Wild</u>, 770 F. Supp. 2d at 344; <u>Donkeyball Movie</u>, 810 F. Supp. 2d at 28.  This is consistent with the Rules, which grant the district court power to drop parties and sever claims "at any time, on just terms." Fed. R. Civ. P. 21.

Other courts have found severance appropriate where a plaintiff made similar allegations to those in this case.  <u>See, e.g.</u>, <u>On the Cheap, LLC v. Does 1-5011</u>, No. 10-4472, 2011 WL 4018258, at *2-*3 (N.D. Cal. Sept. 6, 2011).  <u>On the Cheap</u> had numerous factual characteristics that distinguish it from the present case.[2]  In addition to featuring over five thousand Doe defendants, which created a "logistical nightmare," many were located out of the district and several defendants had already appeared and raised a variety of defenses.  Here, no defendant has appeared or even been identified pursuant to the subpoenas

_____

[2] Similarly, many of the other district court opinions cited in support of the defendants' requests for severance are based on old technology, <u>see</u> <u>LaFace Records, LLC v. Does 1-38</u>, No. 07-298, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008); alleged violations of multiple copyrighted works rather than a single work, <u>see</u> <u>BMG Music v. Does 1-203</u> No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)); or involved defendants that had seemingly been joined "arbitrarily," <u>see</u> <u>Twentieth Century Fox Film Corp. v. Does 1-12</u>, No. 04-4862, 2004 WL 3241669, at *1 (N.D. Cal. Nov. 16, 2004).  Indeed, district courts ruling on the propriety of "swarm joinder" have found the specificity of the factual allegations brought to weigh heavily on the outcome of the Rule 20(a) analysis.  <u>See, e.g.</u>, <u>Patrick Collins, Inc. v. Does 1-2590</u>, No. 11-2766, 2011 WL 4407172, at *5 (N.D. Cal. Sept. 22, 2011) (collecting cases and finding results "highly dependent on the information the plaintiff presented").

served on the defendants' ISPs.

One moving defendant suggests that the variety of defenses that could be raised by the Doe defendants renders joinder inappropriate because it will not foster judicial economy or promote the efficient resolution of the claims in this case. Def. Mot. 5 (ECF No. 5) (citing BMG Music v. Does 1-203, No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004)). However, no defenses have been raised to date in this case, and indeed, consolidating early discovery for the purpose of determining the scope of claims and defenses will foster judicial economy. Should that process reveal disparate defenses as to each party, the Court would consider such a fact relevant on a later review of joinder's propriety.

The Rules grant the Court authority to revisit the issue of misjoinder at a later point in the case, either by motion or sua sponte. With this procedural protection in mind, the Court will deny the motions to sever the defendants without prejudice to their ability to raise the issue of misjoinder at a later time.

B.   Motions to Quash

One moving defendant also requests that the subpoenas served on the ISPs in this case be quashed, challenging the relevance of the information sought by the subpoena and claiming

a First Amendment interest in remaining anonymous.  The Court
will deny this request.

The moving Doe objects to the subpoena served on his or
her ISP because (a) it may not directly identify the infringing
party but instead an innocent third party, and thus falls outside
the scope of permissible discovery; and (b) he or she claims a
privacy interest in the records sought.  Def. Mot. 14-17.  A
court must quash a subpoena under certain circumstances,
including when it subjects a person to undue burden.  A court may
quash or modify a subpoena if it requires disclosure of "a trade
secret or other confidential research, development, or commercial
information" or requires a nonparty to "incur substantial
expense."  It may modify a subpoena if the serving party "shows a
substantial need for the testimony or material that cannot
otherwise be met without undue hardship."  Fed. R. Civ. P.
45(c)(3).  Neither of the moving Doe's arguments raises valid
grounds for quashing the subpoena served on Verizon.

Proceeding with discovery to obtain the identity of Doe
defendants so that they may be served is proper and within the
scope of permissible discovery.  The plaintiff moved for leave to
serve discovery prior to a Rule 26(f) conference in order to do
so.  Pl.'s Mot. 4 (ECF No. 3).  Discovery for the purpose of
identifying Doe defendants is permissible.  See, e.g., Blakeslee
v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009).  The

-13-

Court found good cause for ordering that discovery, <u>see</u> Fed. R. Civ. P. 26(b)(1), because the plaintiff showed that a subpoena seeking the subscriber information associated with the allegedly infringing IP addresses would be the only way for the plaintiff to identify the proper defendants in this case and proceed with its claims against them.[3]  <u>See</u> Declaration of Tobias Fieser ¶ 9, 23, Pl.'s Mot. Ex.  The information sought is thus highly relevant to the plaintiff's claims.

The moving Doe also argues that the subpoena must be quashed because disclosure of his or her identity is violative of a First Amendment right to engage in anonymous online communication.  Def. Mot. 17.  The Constitution protects the right to engage in anonymous communication, and that protection extends to the Internet.  <u>See</u> <u>Reno v. ACLU</u>, 521 U.S. 844, 870

---

[3] The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.  <u>See, e.g.</u>, <u>BMG Music v. Does 1-203</u>, No. 04-650, 2004 WL 953888, at *1 (E.D. Pa. Apr. 2, 2004) (acknowledging this limitation on ISP-level subpoenas). Moreover, the Rules permit parties to obtain discovery of "the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  One moving Doe argues that the individual whose identity is revealed by the subpoena may not be the infringer because of "numerous issues, from open wireless networks being illegally invaded, IP address spoofing[, and] human and collection errors."  Mot. 21.  These are not grounds on which to quash a subpoena otherwise demonstrated to be proper. The moving Doe may raise these and any other nonfrivolous defenses in the course of litigating the case.

(1997).  The First Amendment is implicated by civil subpoenas
seeking the identify of anonymous individuals.  NAACP v. Alabama
ex rel. Patterson, 357 U.S. 449, 462 (1958).  However, anonymous
speech is not entitled to absolute protection, particularly if
the speech consists of copyright infringement.  Harper & Row
Publishers, Inc. v. Nation Enters., 471 U.S. 539, 555-56, 569
(1985); see also In re Capital Cities/ABC, Inc., 918 F.2d 140,
143-44 (11th Cir. 1990) ("[T]he first amendment is not a license
to trammel on legally recognized rights in intellectual
property.") (quoting Dallas Cowboys Cheerleaders, Inc. v.
Scoreboard Posters, Inc., 600 F.2d 1184, 1188 (5th Cir. 1979)).

          The U.S. Court of Appeals for the Third Circuit has not
articulated a standard for balancing the need for discovery
against the right to anonymous speech.  Courts around the country
have applied standards that vary according to the nature of the
protected speech and the showing required to overcome that
protection.  See In re Anonymous Online Speakers, 661 F.3d 1168,
1174-76 (9th Cir. 2011) (noting that courts have required
showings ranging from a "good faith standard" to one
demonstrating the plaintiff's ability "to survive a hypothetical
motion for summary judgment").[4]

_____

          [4] The most exacting standard appears to have been applied by
the Delaware Supreme Court in the context of a defamation case.
See Doe v. Cahill, 884 A.2d 451 (Del. 2005).  The court required
the plaintiff to "submit sufficient evidence to establish a prima
facie case for each essential element" of the claim of defamation

The Second Circuit is the only federal appellate court
to have adopted a test balancing the right to obtain relevant
discovery to pursue a claim of copyright infringement against the
constitutional privilege to engage in anonymous speech online.
See Arista Records, LLC v. Doe 3, 604 F.3d 110, 114 (2d Cir.
2010).[5]  The Second Circuit's test is derived from a 2004
district court opinion that laid out a five-factor test for
balancing intellectual property rights against First Amendment
anonymity interests.  See Sony Music Entertainment Inc. v. Does
1-40, 326 F. Supp. 2d 556, 564-67 (S.D.N.Y. 2004) (adopting the
test after a review of the considerations that had been applied
by district courts to date).[6]

_____

before the court would permit discovery of the alleged defamer's
identity.  Id. at 467.  The Court finds application of such a
standard inappropriate in the present context because Cahill
involved a different type of claim and, more importantly, a
different kind of speech.  The plaintiff in Cahill was a city
councilman whose performance in office had been criticized on an
Internet blog.  Thus Cahill presented concerns over chilling
political speech, which is entitled to the highest level of
protection under the First Amendment.  See McIntyre v. Ohio
Elections Comm'n, 514 U.S. 334, 342 (1995) (describing the
lengthy history of courts safeguarding the right to publish
political speech anonymously).

   [5] As the Ninth Circuit noted, "the paucity of appellate
precedent is not surprising because discovery disputes are not
generally appealable on an interlocutory basis and mandamus
review is very limited." In re Anonymous Online Speakers, 661
F.3d at 1175.

   [6] The test has since been applied by district courts sitting
in the D.C., First, Third, Fourth, Sixth, Seventh, Ninth, and
Tenth Circuits.  See Art of Living Foundation v. Does, No. 10-
5022, 2011 WL 3501830, at *3 (N.D. Cal. Aug. 10, 2011); First

In Sony Music, the court, faced with alleged infringement of musical copyrights, evaluated a Doe defendant's motion to quash a subpoena served on the defendant's ISP that sought to uncover her identity so that she could be served with process. Among other grounds, the Doe defendant argued that the First Amendment protected her right to engage in online file-sharing anonymously. The court recognized the protection afforded to the potentially expressive practice of file-sharing (by choosing a collection files to upload and download). The court also acknowledged the limited protection the Constitution affords to speech constituting copyright infringement and the need for that protection to give way when a civil subpoena, issued in connection with claim of copyright infringement, seeks information necessary to advance that claim. Id. at 562.

The test set forth by the Sony Music court analyzes the following five factors to determine whether the need for disclosure outweighs the right to anonymity where the speech alleged is copyright infringement: (1) a prima facie claim of infringement; (2) the specificity of the information sought from

---

Time Videos, LLC v. Does 1-500, 276 F.R.D. 241, 248-49 (N.D. Ill. 2011); Call of the Wild, 770 F. Supp. 2d at 341; Warner Bros. Records, Inc. v. Doe, No. 08-116, 2008 WL 5111884, at *7 (E.D.N.C. Sept. 26, 2008); Fonovisa, Inc. v. Does 1-9, No. 07-1515, 2008 WL 919701, at *9 (W.D. Pa. Apr. 3, 2008); Interscope Records v. Does 1-14, 558 F. Supp. 2d 1176, 1178 (D. Kan. 2008); London-Sire Records, Inc. v. Doe 1, 542 F. Supp. 2d 153, 163 (D. Mass. 2008); LaFace Records, LLC v. Does 1-5, No. 07-187, 2007 WL 2867351, at *2 (W.D. Mich. Sept. 27, 2007).

the ISP; (3) a lack of alternative means of obtaining that information; (4) a "central need" for the information in order to bring the claim; and (5) the expectation of privacy held by the objecting party.  Id. at 564-65.  Finding that the information sought by the plaintiff's subpoena was necessary to advance its claim, the court denied the motion to quash.  Id. at 567.

The Court concludes that such a test strikes the appropriate balance between the limited protection afforded to speech that constitutes copyright infringement and the need for the plaintiff to serve a defendant with process in order to advance non-frivolous claims of infringement.  As discussed above, the third and fourth factors of the Sony Music test weigh against quashing the subpoena because the plaintiff has shown that obtaining the subscriber information possessed by the ISPs is the only reasonable means of discovering the identity of the subscribers whose IP addresses were used to commit the alleged infringement here.

Additionally, the complaint makes a prima facie claim of copyright infringement, which requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991).  The plaintiff has alleged that it owns the copyright in "Bareback Street Gang" and that the defendants, through use of BitTorrent, connected to the

-18-

plaintiff's investigative server and copied elements of the Work. The first Sony Music factor thus weighs against quashing the subpoena.

The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply.  The subpoena here seeks the name, address, telephone number, e-mail address and "Media Access Control" address (which identifies the specific equipment using the IP address) of the subscriber to whom the served ISP assigned the specific IP addresses at the dates and times of the alleged infringement identified in Exhibit A to the complaint.  Again, although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals.  Thus, the second Sony Music factor weighs against quashing the subpoena.

Finally, courts analyzing the expectation of privacy possessed by internet users engaging in online file-sharing have concluded that such expectation is at most minimal because those individuals have already voluntarily given up certain information by engaging in that behavior.  A Doe defendant who has allegedly used the internet to unlawfully download and disseminate copyrighted material does not have a significant expectation of privacy.  Accord In re Verizon Internet Servs., Inc., 257 F.

-19-

Supp. 2d 244, 267 (D.D.C. 2003) (engaging in peer-to-peer file-sharing is akin to "essentially opening up the computer to the world").  Even if the moving Does retained a reasonable expectation of privacy in their subscriber information, that interest is substantially outweighed by the need to disclose it so that the plaintiff may proceed with bringing what appear to be non-frivolous claims of copyright infringement that cannot be advanced by other means.  Thus, the Court will deny the motions to quash the subpoena.  This denial is without prejudice to the right of any served ISP or other Doe defendant to raise a timely objection to a subpoena served pursuant to the Court's order of December 28, 2011.

Finally, the second moving Doe defendant asks the Court to enter a protective order that will stay discovery in this case "until such time as [his or her] interests . . . can be heard and considered," Mot. 25, but the Court does not understand the basis for this request.  The Rules permit the Court to enter a protective order "for good cause," in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The moving defendant has not put forth the basis for the entry of such a protective order.  To the extent that Doe has argued that his or her interests have not yet been heard as to the appropriateness of the subpoena, those arguments have been addressed above in the

discussion of the motion to quash.

Otherwise, a party may not proceed to litigate in federal court anonymously except in rare circumstances.  Fed. R. Civ. P. 10(a); see also Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011) (finding that "exceptional cases" may merit permitting a party to proceed anonymously upon a showing of a reasonable fear of severe harm).  The second moving Doe has not alleged that he or she fears "severe harm" resulting from the requirement to appear if he or she wishes to defend against the claims the plaintiff has brought.  The Court will not enter a protective order at this time.

An appropriate order shall issue.