UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Raw Films, Ltd., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11-cv-07248-MAM |
| | ) | |
| John Does 1-15, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

FILED

APR 2 5 2012

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

# JOHN DOE xx's MOTION TO RECONSIDER DENIAL OF MOTION (1)TO SEVER DEFENDANTS FOR IMPROPER JOINDER, AND/OR (2) TO QUASH SUBPOENA AND/OR (3) ISSUE A PROTECTIVE ORDER

Defendant, John Doe No. xx[1] ("Defendant"), files this Motion for Reconsideration respectfully asking the Court to reconsider its Denial of Defendant's Motion (1) to sever defendants for improper joinder, and/or (2) to quash subpoena and/or (3) issue a protective order ("MTQ").

Defendant notes that once this Court denied the outstanding motions to sever the Doe Defendants or quash the subpoena's in this case [Mar. 26, 2012, Dkt. No. 6], Raw Films dismissed the complaint against all the John Doe's, who it had extracted personal information

---

[1] John Doe does not identify itself in this filing, but is one of the John Doe Defendants listed on the Subpoena to Verizon Internet Services and will be identified as "John Doe xx" in this Motion.

from through the initial discovery process. [Plaintiff's Motion to Dismiss, Mar. 29, 2012, Dkt. No 7]. Raw Films, in its Motion to Dismiss stated:

> Plaintiff is dismissing these actions claimed against these Defendants and hereby reserves the right to re-file against them in a joined suit once Plaintiff has discussed with the Doe Defendants the possibility of an amicable resolution without the necessity of further court intervention. This process enables all parties to cost effectively and confidentially manage the disputes between them.

As Defendant argued in its MTQ, the instant case is part of a systematic effort to build a business model. This model is based on weak allegations of copyright infringement and questionable use of the legal system to quickly wrest profit generating settlements from Defendants cowed by the high cost and potential liability of such litigation. True to form, as soon as Plaintiff had acquired the names and contact information for the alleged infringers it dismissed the law suit. Various Courts have skeptically described this type of litigation, which has exploded across the country since 2010, as for-profit copyright lawsuits. By way of example, one court noted "this Court has some concerns about plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking the case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts." Mem. Op. and Order at 5, Raylon LLC v. EZ Tag Corp., Civ. A. No. 09-00357 (E.D. Tex. Mar. 9, 2011).

In a recent case in the Northern District of California, after initially agreeing to allow Plaintiff to proceed with discovery to identify the ISP holders, the court required Plaintiff to describe to the Court the process it used in litigating this type of case and how it had litigated previous cases. Astonishingly, Plaintiff admitted to the court that it had not served a single Doe Defendant despite having filed claims against thousands of John Does in various cases. The Court denied any further discovery and severed all but one John Doe defendant finding that:

> The court realizes that this decision may frustrate plaintiff and other copyright holders who, quite understandably, wish to curtail online infringement of their works. Unfortunately, it would appear that the technology that enables copyright infringement has outpaced technology that prevents it. The court recognizes that plaintiff is aggrieved by the apparent infringement and is sympathetic toward its argument that lawsuits like this one are the only way for it to find and stop infringers. However, the court will not assist a plaintiff who seems to have no desire to actually litigate but instead seems to be using the courts to pursue an extrajudicial business plan against possible infringers (and innocent others caught up in the ISP net). Plaintiff seeks to enlist the aid of the court to obtain information through the litigation discovery process so that it can pursue a non-judicial remedy that focuses on extracting "settlement" payments from persons who may or may not be infringers. This the court is not willing to do.

*Hard Drive Productions, Inc. v. John Does 1-90*, No. C11-03825 HRL, Docket No. 6, Order Denying Application for Leave to Take Expedited Discovery and Severing Does 2-90 (ND CA. Mar. 30, 2012).

In the three cases filed by Raw Films in the Eastern District of Pennsylvania, it appears that Plaintiff has dismissed its other two law suits as well, one because the ISP's no longer had the identifying information, the other apparently after it had obtained the identifying information of the ISP holders. *See Raw Films v. John Does 1-17,* 2:2011-cv-07249, *Raw Films v. John Does 1-5*, 2:2011-cv-07354. Defendant would ask the Court to request a report from Plaintiff, Raw Films, detailing for example: (1) how many defendants Raw Films has served across the country in its various copyright infringement cases, (2) how many scheduling orders have been issued by courts in the litigation, (3) how many requests for admissions/interrogatories have been propounded, (4) how many depositions have been taken, (5) what type of discovery has been undertaken, (6) how many documents have been produced, (7) has its expert ever produced an expert report and been deposed, (8) has its expert ever testified in court or been qualified as an expert witness, (9) what type of motion practice has it engaged in, (10) how many mediations has

it conducted and (11) has it ever taken a John Doe Defendant to trial on the merits of its complaint. Additionally, Defendant would request that the court ask Fiore for a report on all the cases he has filed in the Eastern District of Pennsylvania for copyright or trademark infringement and their status, not just those cases filed on behalf of Raw Films nationwide. For instance in addition to the various questions posed above, how many forensic examinations has Raw Films, or any of Fiore's other Plaintiffs, conducted on a john doe defendant's computer and what is the error rate, or false positive rate, of its "tracking software" when compared to actual forensic examinations.

    Defendant agrees that copyright infringement is a serious problem for businesses in this new internet and digital age. However, using the copyright laws and suing individuals for statutory damages of $150,000 for an alleged single download of a movie is a horrible misuse of the copyright regime and the legal system. Congress never intended that those types of damages would be assed against individual infringers, but were intended for large commercial enterprises that were distributing large numbers of movies or other copyrighted material and earning significant revenues without properly compensating the original owner of the protected work. Yet, Plaintiff files lawsuits against many unrelated "alleged infringers" for a mere $350 filing fee. After obtaining the names of the alleged infringers, the Plaintiff proceeds to "encourage" the alleged infringer into agreeing to a settlements of $2000 to $3000 for downloading a $20 to $30 movie in order to avoid the costly expense of defending a copyright infringement case in federal court. John Doe Defendants are offered the choice to settle or pay a private lawyer, and when a few calls are made it becomes painfully obvious that just to obtain representation a private attorney will probably initially charge a John Doe Defendant $2000 to $3000.

So as a defendant, who has not committed the infringement alleged against me, I am faced with the prospect of a costly federal lawsuit or paying a settlement to make the lawsuit go away. And it doesn't look as if the Plaintiff's lawyer, Fiore, has ceased filing these massive lawsuits in the Eastern District of Pennsylvania having just filed 17 new lawsuits[2] on April 19th to compliment the approximately 52 similar actions Fiore has filed since August of 2011, with at least 472 individual John Doe Defendants.

I will categorically state that I did not download the alleged movie, nor have I ever used Bit Torrent software to download any type of movie or music; however, that does not seem to matter. Based upon the research I have conducted regarding the litigation commenced against similarly situated defendants in these types of lawsuits around the country, it looks highly unlikely that I would ever have an opportunity to have my day in court, to attest to my innocence, or to force the Plaintiff to actually have to prove his case.

---

[2] Summarizing the cases filed in the Eastern District of Pennsylvania on April 19 by Christopher P. Fiore of Fiore & Barber, LLC
Malibu Media LLC v. John Does 1-15 12-cv-12-cv-02077
Malibu Media LLC v. John Does 1-16 12-cv-02078
Patrick Collins, Inc. v. John Does 1-11 12-cv-02079
John Stagliano Inc. v. John Does 1-17 12-cv-02080
Malibu Media LLC v. John Does 1-22 12-cv-02083
Malibu Media LLC v. John Does 1-14 12-cv-02084
John Stagliano, Inc. v. John Does 1-15 12-cv-02085
John Stagliano, Inc. v. John Does 1-12 12-cv-02087
Malibu Media LLC v. John Does 1-22 12-cv-02088
Patrick Collins, Inc. v. John Does 1-8 12-cv-02089
Malibu Media LLC v. John Does 1-15 12-cv-02090
Malibu Media, LLC v. John Does 1-16 12-cv-02091
Malibu Media, LLC v. John Does 1-16 12-cv-02092
Malibu Media LLC v. John Does 1-7 12-cv-02093
Malibu Media LLC v. John Does 1-25 12-cv-02094
Malibu Media, LLC v. John Does 1-18 12-cv-02095
Malibu Media, LLC v. John Does 1-18 12-cv-02096

The truth of the matter is that these cases are based on flimsy "scientific evidence". Notably, Plaintiff's expert would probably not be able to pass the evidentiary standards imposed by the federal courts. Additionally, the plaintiffs in these copyright infringement lawsuits really do not appear to be interested in litigating these cases on the merits. Instead they have found an efficient and cost effective method to file massive copyright infringement litigation, allege large damages, join many unrelated individuals together, and then coerce settlement payments. Settlement payments may be received from some, who may have downloaded the movie (although the settlement payments far outweigh the economic harm caused by downloading a movie). Many other innocents are caught up in this scheme, who did not download the alleged pornography but decide to settle for expediency to make the case go away and avoid a potentially expensive legal proceeding. This abuse of the legal system by the Plaintiff is manifestly unfair to individuals who do not have the experience, resources or knowledge of the federal courts. To allow the courts to be used in this method, almost as a private investigator that secures the names of the alleged infringers on behalf of the pornographers is hard to understand. More ridiculous is that once one of the pornographers receives the ISP information, they dismiss the cases and essentially tell the courts "oh we don't need you anymore --- we will take care of this matter privately and not burden the courts with our dispute". This is a perversion and abuse of the legal system.

Finally, I request that this court reconsider its prior ruling on the appropriateness of joining the 15 John Does in this action. I would again ask the court to reconsider the facts alleged by the Plaintiff. The 15 John Doe's in this suit allegedly downloaded the movie, *Bareback Street Gang*, over a period of more than 10 weeks, or a span of almost three months, each on a different day and at different times during the day. *See* Exhibit A to the Complaint.

Although, Plaintiff's counsel alleges that the Doe defendants "in concert" transferred pieces of the copyrighted work to, or from one another, there is no objective evidence to support that allegation. The probability that the 15 John Doe Defendant's acted in concert with each other is unlikely because each John Doe appeared in the swarm on a different date and time, hours, days, or weeks apart from one another. Further, even if the John Does did download the alleged movie a Bit Torrent download is generally accomplished in a short period of time, minutes or hours, so it is extremely unlikely that any one of the Does remained in the swarm long enough to have direct contact with another Doe who entered hours, days or weeks, later. Consider how many times an individual may log in or off a computer, or the internet, or merely how many times the internet crashes --- to assume that each of the 15 John Doe Defendants had his or her computer turned on, and connected to the internet with an open connection to Bit Torrent continuously for the alleged 10 week period which Plaintiff contends constituted the "swarm" strains credulity. The allegation and presumption advanced by Plaintiff in support of its claims is unsupported by reality.

Plaintiff cannot show that the defendants acted in concert with one another simply by appearing in the same swarm at completely different times, or that they conspired with each other to download and distribute the movie for commercial gain to others. Therefore, the court should not find that "a single transaction or series of closely related transactions" connects these 15 John Does. Accordingly, joinder of the Does is inappropriate and John Does 2 through 15 should be severed from this case.

[Remainder of page left intentionally blank]

## Conclusion

I respectfully ask that the Court reconsider its denial of Defendant's Motion to Quash and grant Defendant's (1) Motion to Quash, and (2) Sever Defendant's 2 through 15, from the instant case and such other relief as this Court deems is just and appropriate.

April 25, 2012

Respectfully submitted,

s/John Doe xx
John Doe xx*
Johndoeedpa1234@yahoo.com

* In order to preserve my confidentiality I have not provided the court with my name or address. I have provided an anonymous email address and I certify that I will monitor the docket of this case for activity and respond to any order of this court requiring action on my part.

## CERTIFICATE OF SERVICE

I, John Doe xx, hereby certify that the foregoing documents were delivered to the following parties as indicated on April 25, 2012:

1. VIA EMAIL
   Verizon Legal Compliance

2. VIA US Mail
   Christopher P. Fiore, Esq.
   Fiore & Barber
   425 Main Street, Suite 200
   Harleysville, PA 19438

3. VIA EMAIL
   John Doe
   Filed Motion to Quash or Modify Subpoena
   February 10, 2012
   Docket #5
   Johndoe07248@yahoo.com

**FILED**
APR 2 5 2012
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

Respectfully submitted,

___s/John Doe xx___
John Doe xx
Johndoeedpa1234@yahoo.com